## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MILDRED MIRO RODRIGUEZ<br><br>**Plaintiff,**<br><br>v.<br><br>METROHEALTH, INC. D/B/A HOSPITAL METROPOLITANO; METRO PAVIA HEALTH SYSTEM, INC.; AIG INSURANCE COMPANY<br><br>**Defendants,** | **CIVIL NO. 19-1177 (RAM)** |

## OPINION AND ORDER

Raúl M. Arias-Marxuach, United States District Judge

This matter comes before the Court on co-defendant Metro-Pavía Health System, Inc.'s ("MPHS") *Motion to Dismiss Complaint Against Metro Pavia Health System, Inc.* ("*Motion to Dismiss*") (Docket No. 54), Plaintiff Mildred Miró-Rodríguez's *Response in Opposition Motion to Dismiss Complaint Against Metro Pavia Health System, Inc.* ("*Opposition*") (Docket No. 60), and MPHS' *Reply to Opposition to Motion to Dismiss Complaint Against Metro Pavía Health System, Inc.* ("*Reply*") (Docket No. 61). For reason set below, the Court **GRANTS** MPHS' *Motion to Dismiss*.

### I. BACKGROUND

This case arises from the termination of Plaintiff Mildred Miró-Rodríguez's ("Plaintiff" or "Miró-Rodríguez") employment with Defendant MetroHealth, Inc., doing business as "Hospital

Metropolitano." (Docket No. 26 ¶ 7).[1] Per the *Second Amended Complaint* ("*Complaint*"), Plaintiff "seeks redress for the injuries due to the illegal and discriminatory termination she was subjected to in violation of Title VII of the Civil Rights Act of 1964." Id. at 1. She also avers she "was terminated without just cause from her employment because of her sex and age and/or in retaliation for participating in the investigation of a discrimination complaint filed by another employee of the defendant." Id. at 1-2. Accordingly, she also filed claims based on the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* and various Puerto Rico employment statutes. Id. at 7-11.[2]

The *Complaint* conflates MPHS with MetroHealth, Inc. by stating that they will be "jointly referred to as employer and or Defendants." Id. ¶ 6. The *Complaint* also avers that MPHS "administers Hospital Metropolitano[,]" "participates in, approves and disapproves" MetroHealth, Inc.'s "personnel decisions" and "participated" in Plaintiff's termination. Id. ¶ 7. Lastly, it alleges that their human resources operations "are integrated, operate jointly and have a reporting relationship." Id. at ¶ 8.

---

[1] Throughout the record, Defendant MetroHealth, Inc.'s name appears written in different variations and used interchangeably. For clarity's sake, the Court will adopt the spelling of "MetroHealth, Inc."

[2] Specifically, Puerto Rico's general anti-discrimination statute, Law No. 100 of June 30, 1959, P.R. Laws. Ann. tit 29 §146, *et seq.;* Law No. 69 of July 6, 1985, P.R. Laws. Ann. tit. 29 §§ 1321, *et seq.;* Law No. 115 of December 20, 1991, P.R. Laws Ann. tit. 29 §§ 194 *et seq.* and Puerto Rico's Unjust Discharge Act, Law No. 80 of May 30, 1976, P.R. Laws Ann. tit. 29 §§ 185b *et seq.*

On November 6, 2019, MPHS filed its *Motion to Dismiss*. (Docket No. 54). MPHS argues that dismissal is proper because the *Complaint*: (a) fails to state a claim upon which relief can be granted against MPHS because it was not Plaintiff's employer; (b) lacks sufficient factual matter to state a plausible claim that MetroHealth, Inc. and MPHS were joint employers; and (c) Plaintiff failed to exhaust administrative remedies against MPHS by not including it in her EEOC charge. Id. at 8-21.

Plaintiff timely opposed the *Motion to Dismiss*. (Docket No. 60). In a nutshell, Plaintiff contends that her allegation that MetroHealth, Inc. is an affiliate of MPHS and that the latter administers Hospital Metropolitano, coupled with the allegations jointly directed at both entities, are sufficient to state a plausible claim against MPHS as a joint employer. Id. at 7-12. Plaintiff also contends that her failure to name MPHS in the EEOC Charge is subject to exceptions including whether the entities share an identity of interest. Id. at 13-15. MPHS subsequently filed a *Reply*. (Docket No. 61).

## II. STANDARD GOVERNING RULE 12(b)(6) MOTIONS TO DISMISS

Fed. R. Civ. P. 12(b)(6) requires dismissal of a complaint that "fails to state a claim upon which relief can be granted." The plaintiff must plead enough facts to state a "plausible" claim, and the "[f]actual allegations must be enough to raise a right to relief above the speculative level, […] on the assumption that all

the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and footnote omitted). Hence, dismissal under Rule 12(b)(6) is warranted "only if the facts alleged, taken as true, do not warrant recovery." Menendez v. Comm'r of Soc. Sec., 2020 WL 5075991, at *2 (D.P.R. 2020) (citation omitted).

The Supreme Court has explained that "a plaintiff's obligation to provide the 'grounds' of [their] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 545 (quotation omitted). Thus, a complaint will not stand if it offers only "naked assertion[s]" devoid of "further factual enhancements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). To determine whether a complaint has stated a plausible, non-speculative claim for relief, courts may also consider: "(a) 'implications from documents' attached to or fairly 'incorporated into the complaint,'(b) 'facts' susceptible to 'judicial notice,' and (c) 'concessions' in plaintiff's 'response to the motion to dismiss.'" Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55-56 (1st Cir. 2012) (quotation omitted).

### III. OPERATIVE FACTS

Pursuant to the standard governing dismissal under Fed. R. Civ. P. 12(b)(6), the following facts, derived from the non-

conclusory allegations in the *Complaint* (Docket No. 26) and documents filed alongside Plaintiff's *Opposition* (Docket Nos. 60-1 through 60-4), are taken as true for purposes of this opinion:[3]

1. Plaintiff Miró-Rodríguez is of legal age and resident of Luquillo, Puerto Rico. (Docket No. 26 ¶ 4).

2. Defendant MetroHealth, Inc. is a domestic corporation organized pursuant to the laws of the Commonwealth of Puerto Rico and is authorized to do business in Puerto Rico. It is a for profit entity which owns and operates Hospital Metropolitano in Guaynabo, Puerto Rico. Id. ¶ 5.

3. Defendant MPHS is a domestic corporation organized pursuant to the laws of the Commonwealth of Puerto Rico and is authorized to do business in Puerto Rico. Id. ¶ 6.

4. MPHS' financial statements for the years ending December 31, 2017 and 2018 indicate that it is a wholly-owned subsidiary of Artau Holdings, LLC. (Docket No. 60-1 at 4).

5. MPHS' financial statements also indicate that MetroHealth, Inc. is a related entity under common control requiring disclosure under the Puerto Rico Internal Revenue Code. Id. at 5-6.

---

[3] References to Operative Facts shall be cited as follows: (Fact ¶ _).

6. According to the records of the Puerto Rico Department of State, MPHS and MetroHealth, Inc.'s Corporate Secretary is Carmen Feliciano Vargas. (Docket No. 60-2 at 1).[4]

7. Per the same records, MPHS and MetroHealth, Inc.'s Vice President of Finance is Héctor Galarza. Id.[5]

8. Per the same records, MPHS and MetroHealth, Inc.'s resident agent is Miglisa Capó. (Docket Nos. 60-3 and 60-4).

9. Miró-Rodríguez began working at Hospital Metropolitano as supervisor in the Information Management Department on or about March 19, 2014. (Docket No. 26 ¶ 11).

10. On February 28th, 2018, MetroHealth, Inc., which in conjunction with MPHS Plaintiff identifies as "employer," informed Miró-Rodríguez that she was being terminated from her employment, and on that same date she was handed a termination letter. The termination letter was dated February 26, 2018. Id. ¶ 18.

11. The reason given by her employer was that her position was being eliminated as part of a restructuring. Id. ¶ 19.

## IV. ANALYSIS

For reasons discussed below, the Court agrees with MPHS. Assuming *arguendo* that Plaintiff has made plausible Title VII of

---

[4] MetroHealth, Inc.'s corporate information is available at *Metrohealth, Inc.*, Registry of Corporations and Entities, Puerto Rico Department of State, https://prcorpfiling.f1hst.com/CorpInfo/CorporationInfo.aspx?c=100340-111 (last visited September 16, 2020).

[5] Id.

the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000(e) *et seq.*, and ADEA claims against MetroHealth, Inc. and indulging in reasonable inferences in her favor, the *Complaint* still fails to state a claim upon which relief can be granted **against MPHS** under either the "single-employer" or the "joint employer" theories of liability. Simply put, Plaintiff did not make allegations containing sufficient factual matter stating plausible non-speculative claims that MPHS exercised control over Plaintiff's employment. Accordingly, the Court dismisses the *Complaint* as to MPHS **with prejudice.** Consequently, the Court need not address MPHS' argument that Plaintiff failed to exhaust administrative remedies.

**A. The Complaint does not state a claim under Title VII or ADEA upon which relief can be granted against MPHS under a "single-employer" or "joint employer" theory of liability.**

The *Complaint*'s cryptic averments against MPHS fail to state a claim upon which relief can be granted under the "single employer" or a "joint employer" theory of liability. It does not contain even formulaic recitations of the elements of these theories of liability, let alone allegations of sufficient factual matter stating a plausible non-speculative claim for relief.

Pursuant to the "single employer" doctrine, the Court must determine if "two nominally separate companies may be so interrelated that they constitute a single employer subject to liability under Title VII." Lahens v. AT&T Mobility Puerto Rico, Inc., 2019 WL 1149923 at * 2 (D.P.R. 2019) (quotation omitted). A

Court must consider the following factors when determining if this doctrine, also called the "integrated employer test," is applicable: "1) common management; (2) interrelation between operations; (3) centralized control over labor relations; and (4) common ownership." Torres-Negrón v. Merck & Company, Inc., 488 F.3d 34, 42 (1st Cir. 2007) (citation omitted). Notably, "the test should be applied flexibly, **placing special emphasis on the control of employment decisions**." Burnett v. Ocean Properties, Ltd., 422 F. Supp. 3d 400, 412 (D.P.R. 2019) (emphasis added). Moreover, the requisite level of control is satisfied by "an amount of participation [that] is sufficient and necessary to the total employment process, even absent total control or ultimate authority over hiring decisions." Romano v. U-Haul International, Inc., 233 F.3d. 655 (1st Cir. 2000) (quotation omitted).

Here, Plaintiff has sufficiently plead common ownership and common management (to the extent that there are common corporate officers) per the documents accompanying her *Opposition*. (Docket Nos. 60-1 – 60-4). The documents evince that MetroHealth, Inc. and MPHS are both owned directly or indirectly by Artau Holdings, LLC. (Fact ¶ 4). Puerto Rico Department of State records further show the same *three* persons serve as both defendants' Vice-President of Finance, Corporate Secretary and Resident Agent. (Facts ¶¶ 6-8).

However, Plaintiff's *Complaint* has **not** sufficiently pled an interrelation between operations or centralized control of labor

relations. For example, MPHS and MetroHealth, Inc. do not have the same designated office address. (Docket No. 60-2).[6] The *Complaint* is also devoid of allegations that MPHS has control over the hiring or firing decisions. Instead, it simply avers in Paragraph 6 that MPHS "administers" Hospital Metropolitano. (Docket No. 26 ¶ 6). According to the Oxford English Dictionary, "administer" means "[m]anage and be responsible for the running of (a business, organization, etc.)."[7] Yet, the *Complaint* fails to state any facts on what MPHS's alleged administration of Hospital Metropolitano generally entails, much less with respect to employment matters specifically. Thus, the Court agrees with MPHS that the "administration" averment is a bald, conclusory allegation that need not be credited in the face of a motion to dismiss. (Docket No. 54 at 11). "**[S]ome direct employer needs to be identified before anyone in the group could be liable on the theory that some or all were responsible**." Cavallaro v. UMass Memorial Healthcare, Inc. 678 F.3d 1, 10 (1st Cir. 2012) (emphasis added) (affirming dismissal for failure to identify employer).

Similarly, Paragraph 7 of the *Complaint* avers that MPHS "through their Human Resources officer, participates in, approves and disapproves the personnel decisions of MetroHealth Inc., d/b/a Hospital Metropolitano personnel. Metro Pavia Health System

---

[6] *See* Section III, *infra*, ¶ 6 n. 3.
[7] *Administer*, Lexico, https://www.lexico.com/definition/administer (last visited on September 14, 2020).

participated in the termination of Plaintiff." (Docket No. 26 ¶ 7). And paragraph 8 avers that the Human Resources operations of MetroHealth Inc., d/b/a Hospital Metropolitano and MPHS, "are integrated, operate jointly and have a reporting relationship." Id. § 8. But, again, the *Complaint* contains no factual enhancements to support these conclusory averments. It also fails to identify who is MPHS' "human resource" officer who approves and disapproves personnel decisions. As noted by the First Circuit, "[a] number of courts have made clear that they will not put up with game-playing omissions of plainly relevant detail." Cavallaro, 678 F.3d at 10.

Moreover, while Plaintiff's *Opposition* points to MPSH's website's solicitation for applications for employment with its affiliates, the Court cannot reasonably infer centralized control of labor operations solely from a website. As the First Circuit has cautioned, "an inference is reasonable only if it can be derived. . .without resort to speculation." Hidalgo v. Overseas Ins. Agency, 120 F.3d 328, 332 (1st Cir. 1997). Other Courts have held that the use of a single website "for a group of separate business may establish that those businesses share a 'common purpose[.]'" Huer Huang v. Shanghai City Corp., 2020 WL 2319166, at *5 (S.D.N.Y. 2020) (quotation omitted). But it does not establish "an interrelation of operations or centralized control of labor relations with plaintiffs' identified direct corporate employer sufficient to hold one corporation liable" for violations

of other corporations. Id. (quotation and quotation marks omitted); *see also* E.E.O.C. v. 704 HTL Operating, LLC, 2013 WL 5273219, at *5 n.2 (D.N.M. 2013).

Simply put, the *Complaint* is devoid of the factual detail found in complaints alleging single employer liability which survived motions to dismiss before other judges sitting in this District. For example, in Meléndez-Fernández v Special Care Pharmacy Services, the complaint averred that plaintiff: (a) had worked for all named defendants; (b) received orders from three-named individuals who were officers of the defendants; (c) that one of the defendants controlled, managed and supervised the daily operations, human resources, labor relations, salary, and benefits of all employees of all defendants, and (d) her "conduct, benefits, terms and conditions of employment were governed by an employee manual covering all three defendants." Meléndez-Fernández v Special Care Pharmacy Services, 2012 WL 4813528, at *4-*5 (D.P.R. 2012). Similarly, in Villafane-Colón v. B Open Enterprises, Inc., the complaint sufficiently alleged common ownership, common management, intermingled funds between defendants **and** established a connection between plaintiff's work as an accounting clerk for B Open and the other defendants. *See* Villafane-Colón v. B Open Enterprises, Inc., 932 F. Supp. 2d 274, 279 (D.P.R. 2014).

On the other hand, Title VII liability for two or more entities can also be considered under the "joint employer" test.

Under this test, "[a] joint employer relationship exists where two or more employers exert significant control over the same employees and share or co-determine those matters governing essential terms and conditions of employment." Galarza- Cruz v. HIMA San Pablo, Inc., 2020 WL 2845357, at *9 (D.P.R. 2020) (quotation omitted). Notably, even if the companies are considered "joint employers," they remain independent companies. In contrast to "single employers" where two or more supposedly independent entities are in reality not so separate from each other. *See* Ashe v. Distribuidora Norma, Inc., 7 F. Supp. 3d 134, 145 (D.P.R. 2014).

To qualify "as an employer (or joint employer) for Title VII purposes, an entity must exercise *significant control* over the *terms and conditions* of an individual's employment." Ferrer Marrero v. Misey Rest., Inc., 2019 WL 6833824, at *11 (D.P.R. 2019) (emphasis in original). To determine if such a relationship exists, the following factors are relevant: "supervision of the employees' day-to-day activities; authority to hire, fire, or discipline employees; authority to promulgate work rules, conditions of employment, and work assignments; participation in the collective bargaining process; ultimate power over changes in employer compensation, benefits and overtime; and authority over the number of employees." Rivera-Vega v. ConAgra, Inc., 70 F.3d 153, 163 (1st Cir. 1995) (citation omitted). Here, the *Complaint*'s conclusory allegations and the documents proffered by Plaintiff do not state

a plausible claim that MPHS exerted *significant* control over Ms. Miro-Rodriguez's employment.

Thus, the "joint employer" allegations fail for the same reasons as those of "single-employer" liability. Here too the *Complaint* is devoid of the facts found in complaints alleging joint employer liability which survived motions to dismiss. For example, in Carrillo Hernandez v. Constructora Santiago II, the Court denied a motion to dismiss because more discovery was needed to determine whether the employer defendants were a single or joint employer. *See* Carrillo Hernandez v. Constructora Santiago II, 2017 WL 721985, at *3 (D.P.R. 2017). This after the plaintiff proffered evidence that defendant CS II was Plaintiff's employer after CS II had previously denied as much. Id. The evidence was a picture of an identification badge issued to the plaintiff by CS II. Id.

Likewise, the Court in Polo-Echevarria v. Centro Medico del Turabo, Inc., denied a motion to dismiss because plaintiff could satisfy the "single or joint employer" test later in the proceedings. *See* Polo-Echevarria v. Centro Medico del Turabo, Inc., 949 F. Supp. 2d 332, 337 (D.P.R. 2013). The Court determined this after a plaintiff alleged that the supervisor defendant who sexually harassed him was also the resident agent of codefendant entities. Id. at 334. Further, the plaintiffs alleged that the two corporate defendants CPS and CMT shared common management and a location, defendant CMT was even known as HIMA and they shared

personnel practices such as HIMA/CMT referring a plaintiff for pre-employment drug testing before he worked at CPS. Id. at 335.

Therefore, given that Plaintiff has failed to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), **dismissal with prejudice** of all federal claims against MPHS in the case at bar, is proper. *See* Hochendoner v. Genzyme Corp., 823 F.3d 724, 736 (1st Cir. 2016) (citations and quotations omitted) (emphasis added) (holding that "**the normal presumption is that a Rule 12(b)(6) dismissal is with prejudice**" since "a judgment [under said rule] constitutes 'a final decision on the merits.'")

**B. Since the purported federal claims are being dismissed at the pleadings stage, the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c).**

First Circuit case law is clear "that district courts may decline to exercise supplemental jurisdiction over pendent state law claims when the anchor federal claims for those state law claims are dismissed." Borrás-Borrero v. Corporación del Fondo del Seguro del Estado, 958 F.3d 26, 37 (1st Cir. 2020). Exercising jurisdiction may even be "an abuse of discretion" unless "doing so would serve 'the interests of fairness, judicial economy, convenience, and comity.'" Zell v. Ricci, 957 F.3d 1, 15 (1st Cir. 2020) (quoting Wilber v. Curtis, 872 F.3d 15, 23 (1st Cir. 2017)). Where, as here, the federal claims are properly dismissed, the Court may decline to exercise supplemental jurisdiction over

pending state-law claims. *See e.g.*, Massó-Torrellas v. Municipality of Toa Alta, 845 F.3d 461, 469-70 (1st Cir. 2017).

The Court therefore declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c) and all supplemental claims under Puerto Rico law will be dismissed with prejudice.

### V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** Defendant Metro Pavia Health System, Inc.'s *Motion to Dismiss.* (Docket No. 54). Accordingly, the *Second Amended Complaint* is dismissed with prejudice as to Metro Pavia Health System, Inc.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 17th day of September 2020.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge